No. 25,255.

H. J. VANDENBERG et al., *Appellants,* v. THE BOARD OF EDUCATION OF WICHITA, *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Erection of School Building—Contractor to Furnish Satisfactory Bond—Bond Tendered but Disapproved by the Board.* Under a contract between a construction company and a board of education providing for the erection of a school building and providing that the board of education may require bond for the faithful performance of the work, with such sureties as the board may approve, where such a bond was required, a bond was afterward offered by the construction company and the board disapproved the bond. *Held,* in an action to recover damages for the refusal of the board of education to permit the construction company to erect the building under the contract, the construction company cannot recover where there is no evidence to prove that the refusal to approve the bond was unreasonable, capricious or in bad faith.

2. SAME—*No Binding Contract Completed.* Such a contract as is described
in the first paragraph of this syllabus is not binding on the board of edu-
cation until the bond required has been given by the construction company
and approved by the board.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT,
judge. Opinion filed November 8, 1924. Affirmed.

*John Madden, John Madden, Jr.,* both of Wichita, and *Dennis Madden,* of
Topeka, for the appellants.

*S. B. Amidon, S. A. Buckland,* and *P. D. Gardiner,* all of Wichita, for the
appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiffs seek to recover dam-
ages for the violation of a contract made by the defendant with
the plaintiffs for the erection of a school building in the city of
Wichita. Judgment was rendered in favor of the defendant on its
demurrer to the evidence of the plaintiffs, who appeal.

The evidence tended to prove that the defendant desired to erect
a school building in the city of Wichita, to cost approximately
$170,000; that the defendant received bids for the erection of the
building; that H. J. Vandenberg and W. H. Vandenberg, a partner-
ship under the name of Vandenberg & Son, offered to erect the build-
ing for $170,578.40, which offer was accepted by the defendant; that
a written contract for the erection of the building was then signed
by Vandenberg & Son and by the defendant, which contract in
article 22 of the specifications contained the following provision:
"The owner shall have the right to require the contractor to give
bond covering the faithful performance of the contract and the pay-
ment of all obligations arising thereunder, in such form as the owner
may prescribe and with such sureties as he may approve"; that the
defendant required Vandenberg & Son to give bond under the con-
tract; that the defendant signified that a bond executed by the
United States Fidelity and Guaranty Company would be accepted;
that the plaintiffs proceeded to procure a bond as required by the
contract, and negotiated with the United States Fidelity and Guar-
anty Company and with the Massachusetts Bonding and Insurance
Company for bonds; that the Massachusetts Bonding and Insurance
Company required that the contract for the erection of the building
be signed by parties other than H. J. Vandenberg and W. H. Van-

denberg; that in obedience to that request the Vandenbergs procured the signatures of George R. Lewis, E. Shepherd and S. J. Lewis as parties to the contract; that separate bonds for the faithful performance of the contract were then presented in the sum of $170,-578.40, purporting to be signed by the United States Fidelity and Guaranty Company and by the Massachusetts Bonding and Insurance Company; that evidence of the authority of those signing the bonds to sign them for their principals was submitted with each of the bonds so furnished; that this evidence consisted largely of telegrams; that upon the bonds being presented to the defendant, it referred the examination of them to a committee consisting of one of its members and its attorney, who reported that the evidence of the authority of the agents to sign the bonds was not satisfactory because that evidence consisted largely of telegrams; and that after that report was made the defendant rejected the bonds and caused to be recorded on its minutes the following:

"Deam moved that the action of the board in awarding the contract to Vandenberg & Son for the Roosevelt intermediate school should be rescinded, for the reason that the contractor has failed to comply with and fulfill the conditions of the award by supplying a good, sufficient and legal bond, and a bond satisfactory to the board of education. Motion carried."

The evidence also tended to show that the proof submitted to the defendant concerning the authority of the person who signed for the United States Fidelity and Guaranty Company was limited to signing bonds for $25,000. There was no evidence submitted to the defendant to establish the authenticity of the signatures to the telegrams.

The specifications for the erection of the building, which were a part of the contract, contained the following provision:

"If the contractor should be adjudged a bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, or if he should, except in cases recited in article 35, persistently or repeatedly refuse or fail to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment to subcontractors or for material or labor, or persistently disregard laws, ordinances or the instructions of the architect, or otherwise be guilty of a substantial violation of any provision of the contract, then the owner, upon the certificate of the architect that sufficient cause exists to justify such action, may, without prejudice to any other right or remedy, and after giving the contractor seven days' written notice, terminate the employment of the contractor and take possession of the premises and of all materials, tools and appliances thereon and finish the work by whatever method he may deem expedient."

1. Plaintiffs argue the law concerning the construction of contracts and bonds, the law of principal and agent, the law concerning rescission and forfeiture of contracts, the law of estoppel so far as it concerns the defendant, and the law concerning the rejection of certain evidence offered by the plaintiffs on the trial. All of the plaintiffs' argument, except that concerning the law governing rescission of contracts, depends on the sufficiency of the evidence on the trial to show that those who signed the bonds had authority so to do. The sufficiency of the evidence submitted to the defendant at the time the bonds were offered to show the authority of those who signed them, so as to prove that the defendant acted unreasonably, capriciously, or in bad faith in rejecting them, is not argued. It may be conceded that the evidence on the trial conclusively established the fact that the bonds were signed with authority, but the evidence introduced on the trial was not the same as the evidence submitted to the defendant. The reasonableness, good faith or capriciousness of the defendant in refusing to approve the bonds was, or should have been, the principal question at issue on the trial. It was the turning point in the case. The evidence offered on the trial was not directed to that point. The evidence introduced on the trial was introduced for the purpose of showing that at the time the bonds were signed those who signed them for their principals had the necessary authority therefor. It was necessary to prove that authority, but it was also necessary to prove that a showing of that authority was made to the defendant when the bonds were submitted, in order to show that the objection of the defendant was unreasonable, capricious or in bad faith. It was incumbent on the plaintiffs to satisfy the defendant concerning the security on the bonds and the signatures on them. If on the trial evidence had been introduced to show that the defendant acted capriciously, unreasonably or in bad faith in rejecting the bonds, the matters argued by the plaintiffs would be material; without that evidence the matters argued are immaterial.

The law on this subject has been discussed by the courts of this country. In *Smith v. Weaver*, 41 Pa. Supr. Ct. 253, the court said:

"Where one party agrees to deliver to another party a bond satisfactory to the latter for the performance of the contract the expression of dissatisfaction by the latter with the bond tendered is sufficient, without more, to excuse the latter from the performance of the condition of his contract, if there is no evidence that the rejection of the bond was due to an unreasonable or capricious motive."

In 13 C. J. 675 the following language is used:

"Contracts in which one party agrees to perform to the satisfaction of the other are ordinarily divided into two classes: (1) Where fancy, taste, sensibility or judgment are involved; and (2) where the question is merely one of operative fitness or mechanical utility. In contracts involving matters of fancy taste or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he asserts that he is not. The rule also applies to a contract providing that security for its performance shall be satisfactory."

Again, on page 678 of the same work, the author says:

"It would seem that where the subject matter of the contract involves a question of individual taste or sentiment rather than of utility, the good faith of the party declaring his dissatisfaction cannot be inquired into. But where the subject matter of the contract relates to a thing which is ordinarily desirable only because of its commercial value or its mechanical fitness, it is held that the party must act in good faith and must be honestly dissatisfied."

This court has had occasion to declare the law governing very similar conditions. In *Campbell v. Holcomb,* 67 Kan. 48, 72 Pac. 552, this court declared that—

"A contract of employment at a salary of seventy-five dollars per month and traveling expenses provided that should the employee continue his services for an entire year, and should the character of his business as to volume, etc., and his manner of conducting it be satisfactory to the employer, the latter would make the salary equivalent to one hundred dollars per month by the payment of the twenty-five dollars excess at the close of the year, the determination of which should be left entirely to the employer. In an action to recover the excess salary, *held,* that satisfaction of the employer at the end of the year must be proved." (Syl.)

In *Hollingsworth v. Colthurst,* 78 Kan. 455, 96 Pac. 851, the following language was used:

"A contract for the sale of land provided that the vendor should furnish an abstract showing satisfactory title to the property. In an action against the vendee for damages for his failure to perform, it was alleged that the vendor furnished an abstract showing a good and sufficient title. *Held:* (1) The vendee was the party to be satisfied. (2) It was immaterial that the title was good if the vendee in good faith was not satisfied with it. (3) In order to withstand a demurrer it was essential that the petition either allege that the title was satisfactory to the vendee or show that the vendee did not act in good faith." (Syl.)

These cases show that the conclusion reached by the trial court on the demurrer to the evidence of the plaintiff was correct.

2. Plaintiffs argue that because they were not given seven days' notice of the termination of the contract, the attempted rescission by the defendant was without effect. This makes it necessary to examine the quoted part of article 22 of the specifications. That article provided that the defendant should have the right to require the plaintiffs to give bond to cover the faithful performance of the contract, the sureties on the bond to be approved by the defendant. That bond was required. The contract was not complete and binding until the bond was approved. The defendant had the right to approve the bond and the right to exercise discretion in that approval. The defendant was not compelled to accept whatever bond the plaintiffs should offer, even if it were good, but could insist on a satisfactory bond being given, so long as the objection to the bond offered was not unreasonable, capricious or in bad faith. The objection made by the board to the bonds tendered cannot be said to have been unreasonable, capricious or in bad faith, because in the event of an action on the bonds to recover thereon, if the surety companies had pleaded that the bonds had been executed without authority, the defendant might have been unable to prove that they had been executed with authority. The provision of article 37 of the specifications which required seven days' written notice of the termination of the contract would have applied after the contract became effective and binding. It would not apply until that time. Because the bond offered was not approved, the contract did not become binding on the defendant, and for that reason the plaintiffs cannot recover any damages that may have been sustained by them.

None of the contentions of the plaintiffs can be sustained.

The judgment is affirmed.