506 P.2d 1247 (1973)
Carl STEIDTMANN, Plaintiff-Appellee,
v.
KOELBEL AND COMPANY, Defendant-Appellant.
No. 72-027.
Colorado Court of Appeals, Div. I.
February 21, 1973.
C. J. Berardini, Denver, for plaintiff-appellee.
West & Weaver, Paul G. West, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Carl Steidtmann, plaintiff-appellee, initiated this action to recover an employment incentive bonus payment allegedly due from his past employer, Koelbel and Company, defendant-appellant. In a trial to the court, Koelbel rested at the conclusion of Steidtmann's case without presenting any evidence. Judgment was entered for *1248 Steidtmann in the amount of $1,694.93. We affirm.
The facts are not in dispute. Steidtmann became a real estate salesman for Koelbel in May 1968. Steidtmann was to be compensated on a straight sales commission basis augmented by any bonuses which he might earn under Koelbel's incentive plan. The pertinent part of the plan provides:
"The time and form of compensation will be at the discretion of Koelbel and Company. The only prerequisite for the receipt of compensation under the Sales Incentive Plan is that the sales representative be actively associated with Koelbel and Company at the time designated for the receipt of the compensation."
The plan did not designate when the bonus would be paid. The evidence revealed, however, that the plan was put into effect by Koelbel in about 1962, and until 1968 the bonuses were paid prior to June of the year following the year in which they were earned. The bonuses for 1968 were paid in December 1969, those for 1969 were paid September 30, 1970, and those for 1970 were paid September 25, 1971. The salesmen were never advised as to any company policy as to time of payment.
Steidtmann earned a bonus for the year 1968 which was paid to him in December 1969. He also earned a bonus for the year 1969 which was not paid and is the subject of this lawsuit. Steidtmann voluntarily terminated his employment with Koelbel in May 1970, which, as indicated, was before Koelbel made payment of the 1969 bonuses. It was stipulated prior to trial that the amount of Steidtmann's earned 1969 bonus was $1,694.93. Koelbel denied its liability for payment on the basis that Steidtmann was not associated with the company on the date designated for the payment that year, i. e., September 30, 1970. Although Steidtmann inquired about the bonus prior to the termination of his employment, he was given evasive answers and was not informed until August of that year that Koelbel intended to make payment of the bonuses in September and that he would not receive his.
The sole issue presented by this appeal is whether Koelbel can avoid payment of Steidtmann's earned bonus due to Koelbel's decision to set the date for the payment of bonuses after Steidtmann's termination. In support of its position that the bonus payment should be denied, Koelbel cites Fontius Shoe Co. v. Lamberton, 78 Colo. 250, 241 P. 542. In that case the employee was denied a bonus which he had earned before the termination of his employment. That case is distinguishable, however, in that the bonus plan there provided specific future dates for payment, and the employee knew in advance that bonuses earned would not be paid unless he was still employed on the designated payment dates.
In the case at hand, Koelbel had not, through its written plan or by its conduct, made any announcement of policy as to date of payment. Koelbel, under the terms of the bonus plan, had the sole discretion to determine on what date the payment would be made. In the interpretation of a profit sharing plan which reserved certain discretionary powers in the employer as to what, if anything, would be paid to a terminated employee, our Supreme Court in affirming judgment for the employee stated:
"The bonus committee is the retail manager, the controller, the secretary and the treasurer of the company. It is implied by this provision that the bonus committee will act upon a sound judgment and it is, of course, precluded from arbitrary or oppressive action. While there is no showing of any bad faith on the part of the committee, it must be considered that by its actions here, [the employee] will lose something he has earned, and [the employer], through the decision of its employees constituting the committee, will gain thereby. We feel that clear language in the contract must appear before the decision of the committee, as an interested party, is permitted to stand." Montgomery Ward and *1249 Co. v. Reich, 131 Colo. 407, 282 P.2d 1091.
In the exercise of its discretion Koelbel could vary the date of payment from year to year, thereby causing a forfeiture of an employee's earned bonus which would benefit the employer by delaying payment until after a termination of employment had been effected.
Applying the principle of Montgomery Ward and Co. v. Reich, supra, to the case at hand, we hold that Koelbel, in the exercise of its reserved discretion, may vary the payment dates, but if it chooses to do so, it cannot thereby cause a forfeiture of Steidtmann's duly earned bonus.
Judgment affirmed.
COYTE and PIERCE, JJ., concur.